JAMES *v.* TURNER *et al.**

*(Nashville,* December Term, 1941.)

Opinion filed December 13, 1941.

Petition to Rehear denied January 17, 1942.

(Designated for publication May 3, 1947.)

---

*See O'Quin v. Baptist Memorial Hospital, p. 570, **infra.**

564

ROBERT M. NELSON, W. WRIGHT MITCHELL and FERBER S. FLOYD, all of Memphis, and ROGER MURRAY, of Jackson, for plaintiff in error.

CHARLES L. NEELY and O. W. WELLS, both of Memphis, for defendant in error.

MR. SPECIAL JUSTICE ALAN M. PREWITT delivered the opinion of the Court.*

---

*Sitting for Mr. Justice Cook.

The petitioners, defendants below, Carrol C. Turner *et al.*, filed their petition for *certiorari* on May 3, 1941, seeking a review by this Court of an adverse judgment rendered by the Court of Appeals on March 21, 1941.

Mrs. Clarence James, widow of Clarence James, instituted this suit in the circuit court of Shelby County, Tennessee, seeking to recover damages against Turner and Gotten, operating Turner-Gotten Sanatorium near Memphis, for the alleged wrongful death of Mr. James, caused by the latter plunging into a high tank of water on the premises of the sanatorium and drowning himself while a patient at the institution. Drs. Turner and Gotten were the owners of the institution and specialized in the treatment of mental and nervous diseases, and operated the sanatorium for profit. Mr. James was placed in the institution for observation and treatment on September 20, 1938, and his death occurred on September 30, 1938. Before placing him there for treatment, the wife of the deceased and his brother conferred with Dr. Turner and told him the history of the case. Mr. James was suffering from "chronic alcoholism", was in a very nervous state, and had threatened to take his own life. Dr. Turner told them that they could not place Mr. James in confinement or restraint as he had not been legally committed, but they had ample guards and attendants and he advised placing the patient at the sanatorium. It seems that Mr. James showed some signs of improvement, but he was in a bad condition and no doubt it would have required several weeks of treatment and rest to have cured him, had he not ended his own life..

After the patient had been in the institution several days, Mrs. James went to Memphis from her home in Jackson and took her husband to the City of Memphis on

one or two occasions. While he was depressed and nervous, these trips seemed to improve his condition.

On the day he lost his life, Mr. James in company with Mr. Sylvester, a guard and attendant, went out on the grounds for exercise of the patient. It seems in this class of cases exercise and fresh air are recommended and used in these institutions for the restoration of the nervous system. The institution had about 50 acres of land on which stood the sanatorium, out buildings, including a large barn, and the 53 feet in height water tank, which contained about 12,000 gallons of water. This tank was used for the purpose of supplying the water needs at the institution.

They went out toward the barn, which was a few hundred yards from the main building, and near this barn was the water tank. A ladder extended from the foot of the tank structure to the top side of the tank.

When they neared the barn, the guard and the deceased were talking and deceased asked him about the tank and how much water it would hold. The guard answered that it held about twelve or fourteen thousand gallons of water.

A negro, Mose Colton, also worked at the institution and looked after the barn and the saddle horses. The horses were kept for the patients who were well enough to ride for their exercise and diversion. When the guard and James approached the gate opening into the barn lot, they saw Mose riding a horse, bringing it to one of the patients to ride. Suddenly Mr. James began running and Mr. Sylvester followed about five or six yards behind. Deceased climbed the ladder of the tank and jumped into it, drowning himself. The patient was not handcuffed or otherwise restrained.

The jury returned a verdict of $12,000 in favor of the plaintiff widow, and, after the jury reported, the trial

judge stated that he thought he was in error in not sustaining defendants' motion for peremptory instructions and accordingly set the verdict aside, granted defendants' motion, and dismissed the suit. Plaintiff thereupon made a motion for a new trial, which was overruled, and prayed and was granted an appeal to the Court of Appeals. The latter court reversed the judgment of the trial court, holding that the plaintiff was entitled to go to the jury on the question of negligence and that the lower court was in error in sustaining defendants' motion. The Court, however, refused to reinstate the verdict, but remanded the case for a new trial. So the case is here on petition of defendants below complaining of the action of the Court of Appeals in holding that there was evidence of some neggligence on the part of the defendants and the petition of the plaintiff that the verdict should have been reinstated.

██ The institution, having received Mr. James as a patient, owed him the duty of exercising reasonable care for his safety, the degree of care depending upon the circumstances of the case, and it should be borne in mind that the institution was apprised of his highly nervous condition and also of his threats of suicide. It was incumbent upon the plaintiff to show some fact or circumstance from which reasonable minds might draw the inference that there was some negligence which would make a jury question. The facts, for the most part, and certainly all of the material facts for the purpose of a motion, are undisputed and it becomes necessary to determine whether any reasonable inference or conclusion can be drawn that there was some negligence on the part of the defendants. It is undisputed that Dr. Turner told the plaintiff and deceased's brother that they had a sufficient number of guards or attendants to care for Mr.

James, but it is also undisputed that Dr. Turner also told them that they had no legal authority to restrain the deceased or to use force. However, if it be assumed that the institution did have the right to use restraint and such added precautions as handcuffs or ropes for the safety of the patient, the record discloses that he had shown some improvement by his stay at the sanatorium for several days, and it might well be said that the use of ropes or handcuffs or other restraining forces would have retarded his natural progress in regaining his health, both physical and mental.

The Court of Appeals cites and quotes from *Hawthorne* v. *Blythewood, Inc.,* 118 Conn. 617, 174 A. 81, where it is insisted that although the sanatorium had been advised of the suicidal tendency of the patient, it was not liable for his death by his own hand because he had not been committed by any court, and that it was therefore without authority to restrict the liberty of the patient so as to prevent him from committing suicide. However, it appeared in that case that at the time of the suicide the private attendant had left the deceased in a room by himself and while the attendant was gone the deceased escaped and committed suicide by drowning in a pond nearby.

There is no doubt that the general rule is that voluntary submission to the authority of a sanatorium raises an implied obligation on its part to give the patient such reasonable care and attention for his safety as his mental and physical condition require. *Wetzel* v. *Omaha Maternity & General Hospital Association,* 96 Neb. 636, 148 N. W. 582, Ann. Cas. 1915B, 1224; *Broz* v. *Maternity & General Hospital Ass'n,* 96 Neb. 648, 148 N. W. 575, L. R. A. 1915D, 334; *Hogan* v. *Clarksburg Hospital Co.,* 63 W. Va. 84, 59 S. E. 943. When a patient enters

a hospital maintained for private profit, he is entitled to such reasonable attention as his safety may require, and, if he is temporarily bereft of reason and is known by the hospital authorities to be in danger of self-destruction, the authorities are in duty bound to use reasonable care to prevent such an act. *Fetzer* v.. *Aberdeen Clinic*, 48 S. D. 308, 204 N. W. 364, 39 A. L. R. 1423.

In the instant case, the question presented under the facts as above detailed is, Did the institution use reasonable care and caution under the circumstances in looking after this man? Here the patient had shown marked improvement. He had been taken to town on one or two trips by his wife and had voluntarily gone into a barber shop. At the time of his unfortunate death, the patient had a guard or attendant with him. Can it be said that it was within reasonable contemplation that the patient would suddenly dash away, climb the tank ladder and end his life, any more than it can be said that he could have run off and into a public street or thoroughfare and purposely allowed an automobile to run over him; or any more than it can be said that it could have been reasonably anticipated that he would see a knife or razor hidden or partly hidden in the grass and there suddenly take it and end his own life? These things are possibilities, but not probabilities.

The basis of plaintiff's suit must be grounded upon some act of negligence. This act we fail to find in this record. It therefore results that the judgment of the Court of Appeals will be reversed and plaintiff's suit dismissed with costs.

All Justices concur.