# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 11, 2000 Session

## BOBBY WAYNE RAINS, ET AL. v. BEND OF THE RIVER, ET AL.

### Appeal from the Circuit Court for Putnam County
### No. 98J-0254     John A. Turnbull, Judge

---

### No. M2000-00439-COA-R9-CV - Filed July 31, 2003

---

This appeal involves an eighteen year old who committed suicide with his parents' .25 caliber handgun. The parents filed suit in the Circuit Court for Putnam County against the retailer who sold their son ammunition for the handgun shortly before his death. They later amended the complaint to seek loss of consortium damages for themselves and their son's surviving siblings. The trial court denied the retailer's motion for summary judgment regarding the wrongful death claims, as well as the retailer's motion to dismiss the loss of consortium claims. Thereafter, the trial court granted the retailer permission to seek a Tenn. R. App. P. 9 interlocutory appeal from its refusal to dismiss the wrongful death and loss of consortium claims. We granted permission to appeal and have now determined that the trial court erred by denying the retailer's Tenn. R. Civ. P. 56 and 12.02(6) motions because, based on the undisputed facts, the suicide was not reasonably foreseeable and was the independent, intervening cause of the young man's death.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Richard W. Mattson, Nashville, Tennessee, and Daniel H. Rader, III, Cookeville, Tennessee, for the appellant, Bend of the River.

John E. Acuff, Cookeville, Tennessee, for the appellees, Bobby Wayne Rains, Sandy Gail Rains, John Rains, and Adriane Rains.

R. Douglas Hanson, Memphis, Tennessee, for the amicus curiae, Tennessee Defense Lawyers Association.

## OPINION

## I.

Aaron Rains was one of three children of Bobby Wayne Rains and Sandra Gail Rains. In July 1995, when he was sixteen, Mr. Rains and his parents moved from Mississippi to Cookeville, Tennessee. He made new friends, attended school, and, like many teenage boys, found a series of part-time jobs to earn some spending money. Mr. Rains was an active member of the local Police

Explorers post and sang in his church's youth choir. He was also particularly close to his mother's older brother who worked as a deputy sheriff with the Putnam County Sheriff's Department and frequently rode with his uncle on patrol. Mr. Rains had aspirations to continue his education following high school and to pursue a career in either law enforcement or forestry.

Mr. Rains's father had always owned firearms and had taught his son to shoot at a young age. He forbade his son to use the firearms unless he was present to supervise. In addition to several rifles and shotguns, Mr. Rains's father owned a .25 caliber handgun that he had purchased while the family lived in Mississippi. He stored the handgun and the other weapons in a locked gun case in his home, and he kept the key to the gun case in his wife's jewelry box. Mr. Rains and his father had frequently used to the .25 caliber handgun and a .22 caliber rifle for target practice while they lived in Mississippi. They did not have target practice after moving to Cookeville because they lacked a suitable place to shoot.

Mr. Rains turned eighteen in mid-January 1997. At some point on July 16, 1997, Mr. Rains found the key to his father's gun case and removed the .25 caliber handgun. He closed and locked the case and then returned the key to his mother's jewelry box where he had found it. Then, he set out to find ammunition for the pistol because his father did not have any ammunition in the house. His first stop was the sporting goods department at a local K-Mart. He inquired about the minimum age for purchasing .25 caliber ammunition and was told that buyers of that ammunition must be at least twenty-one years old. Mr. Rains showed the clerk his driver's license and commented, "Oh, I'm only eighteen." Rather than purchasing the ammunition, Mr. Rains purchased a package of BBs and left K-Mart.

After leaving K-Mart, Mr. Rains drove to Bend of the River Shooting Supplies, a store in Cookeville selling firearms, shooting supplies, and ammunition. While at Bend of the River, Mr. Rains purchased a box of Winchester .25 ACP automatic caliber 50 gr. full metal jacket cartridges.[1] The store clerk did not ask Mr. Rains for proof of his age and accepted Mr. Rains's personal check in the amount of $11.85 in payment for the ammunition. There is no evidence that Mr. Rains's conduct or demeanor while he was at Bend of the River were out of the ordinary.

Sometime later, either on July 16, 1997 or early July 17, 1997, Mr. Rains drove his car to Walker Hollow Road and parked. He loaded his parents' pistol with the ammunition he had purchased at Bend of the River and fatally shot himself. The box of ammunition bearing Bend of the River's price tag was found in his car. It is undisputed that Mr. Rains used the .25 caliber handgun and ammunition to commit suicide. It is equally undisputed that neither Mr. Rains's parents nor any other family members had any sort of warning that Mr. Rains was planning to take his own life. From all outward signs, he was a happy, well-adjusted young man.

Mr. Rains's mother and sister were away at a church camp on July 16, 1997. His father was not alarmed when Mr. Rains did not return home that evening. Nor was he concerned when he discovered that his .25 caliber handgun was missing from the gun case. However, on the morning of July 17, 1997, Mr. Rains's father called his brother-in-law to report that his son had not come

---

[1] *Appalachian Res. Dev. Corp. v. McCabe*, No. 2:01-0061, at 5 (M. D. Tenn. Mar. 31, 2003).

home.  Mr. Rains's father and uncle searched his room looking for some clue about his whereabouts and found the K-Mart bag containing the BBs and the sales slip from Bend of the River.  They went to both K-Mart and Bend of the River and then drove around looking for Mr. Rains and talking to his friends about where he might be.

Ms. Rains returned home when the news of her son's disappearance reached her.  She and her husband distributed fliers around Putnam County, and the members of their church mobilized to help the Putnam County Sheriff's Department look for Mr. Rains.  On Sunday morning, July 20, 1997, Ms. Rains's brother received word that Mr. Rains had been found dead in his automobile.  He asked his sister and brother-in-law to meet him at the sheriff's office and when they arrived, he informed them of their son's death.  Several days later, the funeral director returned Mr. Rains's personal effects, including his wallet, to his family.  Mr. Rains's father found a suicide note in the wallet.  The note shed no light on the basis for Mr. Rains's decision to take his own life.

On July 15, 1998, Mr. Rains's parents filed a wrongful death lawsuit seeking actual and punitive damages from Bend of the River premised on two theories – negligence per se and negligent entrustment.  They asserted that Bend of the River was negligent per se because it had sold handgun ammunition to a person who was less than twenty-one years of age in violation of the Gun Control Act [18 U.S.C. § 922(b)(1) (2000)].  They also asserted that Bend of the River should not have entrusted handgun ammunition to an "18 year old child."  Bend of the River filed an answer denying liability and, in July 1999, moved for a summary judgment, asserting (1) that Mr. Rains's suicide was an intervening, superseding cause that relieved it of liability, (2) that more than fifty percent of the fault for Mr. Rains's death must be attributed to others, and (3) that the punitive damage claim must fail because Mr. Rains's parents had produced no evidence of intentional, fraudulent, malicious, or reckless conduct on its part.

The trial court denied the motion and granted Mr. Rains's parents' oral motion to amend their complaint to add a claim for loss of consortium for themselves and Mr. Rains's surviving brother and sister.  Bend of the River filed a Tenn. R. Civ. P. 12.02(6)[2] motion to dismiss the loss of consortium claims.  The trial court denied the motion but later granted Bend of the River's Tenn. R. App. P. 9 motion to seek an interlocutory appeal from its denial of the summary judgment motion with regard to the wrongful death claims and the motion to dismiss the loss of consortium claims. We granted Bend of the River's application for an interlocutory appeal and now reverse the trial court.

## II.
### THE WRONGFUL DEATH CLAIMS

We turn first to Mr. Rains's parents' wrongful death claims based on negligence per se and negligent entrustment.  Even though the sale of the handgun ammunition to Mr. Rains violated 18

---

[2]Courts must construe motions based on their substance rather than their title.  *Bemis Co. v. Hines*, 585 S.W.2d 574, 576 (Tenn. 1979); *Starks v. Browning*, 20 S.W.3d 645, 652 (Tenn. Ct. App. 1999).  Bend of the River's motion invoked Tenn. R. Civ. P. 12.06.  Because the substance of the motion did not seek to strike "any redundant defense or any redundant, immaterial, impertinent or scandalous matter" from the complaint, we presume that the reference to Tenn. R. Civ. P. 12.06 is a typographical error and that Bend of the River intended to invoke Tenn. R. Civ. P. 12.02(6).

U.S.C. § 922(b)(1), we have determined that Bend of the River is entitled to a summary judgment dismissing both claims because Mr. Rains's suicide was an independent, intervening act that Bend of the River could not reasonably have been expected to foresee.

## A.
## The Standard of Review

The standards for reviewing summary judgments on appeal are well-settled. A summary judgment is proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000). Because a summary judgment involves an issue of law rather than an issue of fact, *Planters Gin Co. v. Federal Compress & Warehouse Co.*, 78 S.W.3d 885, 889 (Tenn. 2002), orders granting or denying a summary judgment are not entitled to a presumption of correctness on appeal. *Pero's Steak & Spaghetti House v. Lee,* 90 S.W.3d 614, 620 (Tenn. 2002); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001).

Appellate courts do not employ the standard of review in Tenn. R. App. P. 13(d) when reviewing an order granting or denying a summary judgment. *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997); *Estate of Kirk v. Lowe*, 70 S.W.3d 77, 79-80 (Tenn. Ct. App. 2001). Rather, we determine for ourselves whether the moving party has satisfied the requirements of Tenn. R. Civ. P. 56. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cantrell v. DeKalb County*, 78 S.W.3d 902, 905 (Tenn. Ct. App. 2001). In this process, we must consider the evidence in the light most favorable to the nonmoving party and resolve all inferences in the nonmoving party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 342 (Tenn. 2002).

Once the moving party demonstrates that it has satisfied Tenn. R. Civ. P. 56's requirements, the non-moving party must demonstrate how these requirements have not been satisfied. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Mere conclusory generalizations will not suffice. *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 864 (Tenn. Ct. App. 2001). Non-moving parties may deflect a summary judgment motion challenging their ability to prove an essential element of their case by (1) pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) rehabilitating evidence challenged by the moving party, (3) producing additional evidence that creates a material factual dispute, or (4) submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88-89 (Tenn. 2000); *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). A non-moving party who fails to carry its burden faces summary dismissal of the challenged claim because, as our courts have repeatedly observed, the "failure of proof concerning an essential element of the cause of action necessarily renders all other facts immaterial." *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995).

A motion for summary judgment may be used to resolve a number of outcome-determinative issues in negligence cases. For example, it may be used to determine whether a plaintiff has been unable to prove any of the essential ingredients of his or her claim. *Coln v. City of Savannah*, 966

S.W.2d 34, 44 (Tenn. 1998), *clarified by Cross v. City of Memphis*, 20 S.W.3d 642, 644 (Tenn. 2000); *Madison v. Pickett County Bank & Trust Co.*, 33 S.W.3d 815, 816 (Tenn. Ct. App. 2000); *Roe v. Catholic Diocese of Memphis, Inc.*, 950 S.W.2d 27, 31 (Tenn. Ct. App. 1996). Specifically, it may be used to determine whether a defendant owes a duty to a plaintiff in a particular circumstance because questions involving the existence and extent of one's legal duty to prevent harm to others is a question of law for the courts. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d at 89; *Plunk v. National Health Investors, Inc.*, 92 S.W.3d 409, 413 (Tenn. Ct. App. 2002); *Tompkins v. Annie's Nannies, Inc.*, 59 S.W.3d 669, 673 (Tenn. Ct. App. 2000).

Questions regarding breach of duty, causation in fact, and legal causation are ordinarily questions of fact for the jury. However, even these questions may be decided at the summary judgment stage if the evidence is uncontroverted and if the facts and the inferences drawn reasonably from the facts permit reasonable persons to draw only one conclusion. *White v. Lawrence*, 975 S.W.2d 525, 529-30 (Tenn. 1998) (intervening cause); *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991) (proximate or legal cause); *Anderson v. City of Chattanooga*, 978 S.W.2d 105, 107 (Tenn. Ct. App. 1998) (causation and breach of duty).

**B.**
**The Negligence Per Se Claim**

In Tennessee, the common-law standard of conduct to which a person must conform to avoid being negligent is the familiar "reasonable person under similar circumstances" standard. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d at 89; *Snider v. Snider*, 855 S.W.2d 588, 590 (Tenn. Ct. App. 1993). As a general matter, this standard requires a person to exercise reasonable care under the circumstances to refrain from conduct that could foreseeably injure others. *Bradshaw v. Daniel*, 854 S.W.2d 865, 871 (Tenn. 1993). This standard is flexible, and its contours are inherently fact-sensitive. Therefore, determinations regarding whether particular conduct conforms to the common-law standard of conduct are made on a case-by-case basis.

However, the common law is not the only source of legal duties or standards of conduct in negligence cases. In addition to the general duty to act reasonably to avoid harming others, more specific duties governing particular situations and relationships may be imposed by the General Assembly. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994). Legislatively created legal duties arise in two ways. First, the General Assembly may create a legal duty and then provide a civil cause of action for its breach.[3] Second, the General Assembly may enact a penal statute that does not explicitly provide a civil remedy,[4] and the courts may then derive a civil legal

---

[3] For example, the Tennessee Consumer Protection Act of 1977 imposes on merchants the duty to refrain from engaging in defined unfair and deceptive trade practices, Tenn. Code Ann. § 47-18-104 (Supp. 2002), and provides for a private cause of action for the breach of this statutory obligation. Tenn. Code Ann. § 47-18-109(a)(1) (2001).

[4] For example, motorists must stop in response to an illuminated flashing red traffic signal. Tenn. Code Ann. §§ 55-8-112(a)(1), -145(a)(1) (1998). Failure to obey these rules of the road is a Class C misdemeanor, but neither statutes contains a provision explicitly authorizing a civil action for damages against persons who violate the statute.

duty from the penal statute. "Negligence per se" is the term used to describe one of the two doctrines associated with the latter process.[5]

The negligence per se doctrine enables the courts to mold standards of conduct in penal statutes into rules of civil liability. The process has been analogized to "judicial legislation,"[6] and its governing principles and their application vary considerably from jurisdiction to jurisdiction.[7] Still, a consensus exists regarding many of the doctrine's basic precepts.

The negligence per se doctrine does not create a new cause of action. *Talley v. Danek Med., Inc.,* 179 F.3d 154, 158 (4th Cir. 1999); *Cabiroy v. Scipione*, 767 A.2d 1078, 1079 (Pa. Super. Ct. 2001); *Zavala v. Trujillo*, 883 S.W.2d 242, 246 (Tex. App. 1994). Rather, it is a form of ordinary negligence, *Lowdermilk v. Vescovo Bldg. & Realty Co.*, 91 S.W.3d 617, 628 (Mo. Ct. App. 2002), that enables the courts to use a penal statute to define a reasonably prudent person's standard of care. *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1166 (Colo. 2002); *Gradjelick v. Hance*, 646 N.W.2d 225, 231 n.3 (Minn. 2002); *Sikora v. Wenzel*, 727 N.E.2d 1277, 1280 (Ohio 2000); *Reeder v. Daniel*, 61 S.W.3d 359, 361-62 (Tex. 2001). Negligence per se arises when a legislative body pronounces in a penal statute what the conduct of a reasonable person must be whether or not the common law would require similar conduct. *Lowdermilk v. Velscovo Bldg. & Realty Co.*, 91 S.W.3d at 628.

The negligence per se doctrine is not a magic transformational formula that automatically creates a private negligence cause of action for the violation of every statute. *Talley v. Danek Med., Inc.*, 179 F.3d at 158. Not every statutory violation amounts to negligence per se. *Snider v. Snider*, 855 S.W.2d at 590. To trigger the doctrine, the statute must establish a specific standard of conduct. *Thomas & Assocs. v. Metropolitan Gov't*, No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *7 (Tenn. Ct. App. June 6, 2003); *King v. Danek Med., Inc.*, 37 S.W.3d 429, 460 (Tenn. Ct. App. 2000); Restatement (Second) of Torts § 286 cmt. d; Restatement (Second) of Torts § 874A cmt. e ("The common law tort of negligence is not changed, but the expression of the standard of care in certain fact situations is modified; it is changed from a general standard to a specific rule of conduct."). Many states require the statutory standard of conduct to differ from the ordinary prudent person standard of conduct. *E.g.*, *Kentucky Fried Chicken of Cal., Inc. v. Superior Court*, 927 P.2d 1260, 1266 (Cal. 1997); *Borns ex rel. Gannon v. Voss*, 70 P.3d 262, 269 (Wyo. 2003). Invoking the

---

[5] In addition to the negligence per se doctrine, courts may also infer new private rights of action from a penal statute. Compare Restatement (Second) of Torts §§ 286, 288 (1965) with Restatement (Second) of Torts § 874A (1979). These two doctrines are analytically related but legally distinct. *See Pratico v. Portland Terminal Co.*, 783 F.2d 255, 265-67 (1st Cir. 1985); Restatement (Second) of Torts § 874A cmt. e. However, many of the same considerations that are relevant to determining whether to identify a new private right of action are also relevant to determining whether a specific statutory standard of conduct should be imported into a negligence action.

[6] W. PAGE KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 36, at 222 (5th ed. 1984) ("PROSSER & KEETON"). Deciding whether to invoke the negligence per se doctrine requires the courts to make policy decisions. The courts are not required to provide these civil remedies, and the decision to do so is a judicial, not a legislative act. Restatement (Second) of Torts § 286 cmt. d.

[7] 2 STUART M. SPEISER, ET AL., THE AMERICAN LAW OF TORTS § 9:8, at 1023-24 (1985) (noting that "[t]his area of the effect of the violation of a statute, ordinance or administrative regulation in the law of negligence is one in which, indeed, angels fear to tread. Overbroad language and sweeping statements can be found in decisions to support virtually any position as to the effect of such violation.").

negligence per se doctrine is unnecessary and redundant if the statute requires only the ordinary reasonable person standard of conduct.[8] *Supreme Beef Packers, Inc. v. Maddox*, 67 S.W.3d 453, 456 (Tex. App. 2002); *Smith v. Central Freight Lines, Inc.*, 774 S.W.2d 411, 412 (Tex. App. 1989).

The effect of declaring conduct negligent per se is to render the conduct negligent as a matter of law. *Sammons v. Ridgeway*, 293 A.2d 547, 549 (Del. 1972); *Goode v. Bauer*, ___ S.W.3d ___, ___, 2003 WL 21355243, at *2 (Tex. App. 2003).[9] Thus, a person whose conduct is negligent per se cannot escape liability by attempting to prove that he or she acted reasonably under the circumstances. *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 930 n.10 (Colo. 1997); *Wilmington Country Club v. Cowee*, 747 A.2d 1087, 1095 n.27 (Del. Super. Ct. 2000); *Freudiger v. Keller*, 104 S.W.3d 294, 297 (Tex. App. 2003). However, a finding of negligence per se is not equivalent to a finding of liability per se. *Duckwitz v. Manor*, 519 S.E.2d 483, 484 (Ga. Ct. App. 1999); *Sikora v. Wenzel*, 727 N.E.2d at 1281; *Trivelas v. South Carolina Dep't of Transp.*, 588 S.E.2d 271, 275 (S.C. Ct. App. 2001). Plaintiffs in negligence per se cases must still establish causation in fact, legal cause, and damages. *McIntyre v. Balentine*, 833 S.W.2d 52, 59 (Tenn. 1992); *Stegall v. Dot Mfg. Corp.*, 223 Tenn. 428, 436, 446 S.W.2d 515, 518 (1969); *Kim v. Boucher*, 55 S.W.3d 551, 557 (Tenn. Ct. App. 2001).

The fact that the General Assembly has enacted a statute defining criminal conduct does not necessarily mean that the courts must adopt it as a standard of civil liability. *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997). Decisions regarding the proper civil standard of conduct rest with the courts. *Ramirez v. Plough, Inc.*, 863 P.2d 167, 172 (Cal. 1993). Thus, the courts must ultimately decide whether they will adopt a statutory standard to define the standard of conduct of reasonable persons in specific circumstances. *Burns v. Frontier II Props. Ltd. P'ship*, ___ S.W.3d ___, ___, 2003 WL 1961241, at * 3-4 (Mo. Ct. App. 2003); Restatement (Second) of Torts § 874A cmt. e ("[I]t is the court that adopts and utilizes the statutory rule in substitution for the general standard and . . . [the court] may exercise its sound discretion as to when this should be done.").

The courts consider a number of factors to determine whether the violation of a statute should trigger the negligence per se doctrine. The two threshold questions in every negligence per se case are whether the plaintiff belongs to the class of persons the statute was designed to protect and whether the plaintiff's injury is of the type that the statute was designed to prevent. *Hardin v. Danek Med., Inc.*, 985 S.W.2d 449, 452 (Tenn. Ct. App. 1998); *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992); 1 DAN B. DOBBS, THE LAW OF TORTS § 137, at 323 (2001); Restatement (Second)

---

[8] For example, Tenn. Code Ann. § 55-8-112(a)(2) requires drivers to proceed with caution when confronted with an illuminated flashing yellow caution signal. This statute requires the driver to exercise his or her judgment and reflects a standard of care that is no different from the ordinary prudent person standard of conduct. It differs from Tenn. Code Ann. § 55-8-112(a)(1) which requires motorists to stop at flashing red warning lights without exercising their judgment regarding the necessity of stopping.

[9] *See also* PROSSER & KEETON § 36, at 230 ("The effect of such a rule is to stamp the defendant's conduct as negligence, with all the effects of common law negligence, but no greater effect.").

of Torts § 286.[10]   Affirmative answers to these questions do not end the inquiry.   Courts also consider (1) whether the statute is the sole source of the defendant's duty to the plaintiff, (2) whether the statute clearly defines the prohibited or required conduct, (3) whether the statute would impose liability without fault, (4) whether invoking the negligence per se doctrine would result in damage awards disproportionate to the statutory violation, and (5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute. *Alloway v. Bradlees, Inc.*, 723 A.2d 960, 967 (N.J. 1999); *Reeder v. Daniel*, 61 S.W.3d 359, 366-68 (Tex. 2001); *Goode v. Bauer*, 2003 WL 21355243, at *3; Restatement (Second) of Torts § 874A cmt. h(1).

We have substantial doubt that the illegal sale of handgun ammunition to an eighteen-year-old purchaser who used it to commit suicide should trigger the negligence per se doctrine. Congress did not undertake to create a private, civil cause of action for these sorts of violations of the Gun Control Act of 1968.[11]   In addition, the Act does not contain a clearly defined standard of conduct with regard to the sale of ammunition to persons who may be intending to use it for self-destructive purposes. Finally, it is far from clear that Congress intended to protect adults from self-destructive acts when it enacted the Gun Control Act.[12]

The courts that have addressed the question of whether various violations of the Gun Control Act of 1968 trigger liability under the negligence per se doctrine have reached inconsistent results.[13] However, the Tennessee Supreme Court has, over the years, been quick to invoke the negligence per se doctrine with regard to violations of penal statutes designed to protect the public. *Brookins v. The*

---

[10]The Restatement points out that the courts should not adopt a standard of conduct defined by legislation if the legislation's exclusive purpose is (1) to protect a class of persons other than the one whose interests are invaded, (2) to protect an interest other than the one invaded, (3) to protect against other harm than that which has resulted, or (4) to protect against other hazards than that from which the harm has resulted. Restatement (Second) of Torts § 288(d-g).

[11]Since the Act's original enactment, there have been several unsuccessful attempts to amend the Gun Control Act of 1968 to expressly provide a civil cause of action for negligent handgun and ammunition sale. Kennedy-Rodino Handgun Crime Control Act of 1983, S.511 § 105(d), 98th Cong., 1st Sess., 129 Cong. Rec. S1315, at S1319 (proposed amendment to Section 924(e)) (daily ed., Feb. 17, 1983); *see also* 11 Todd Iveson, Note, *Manufacturer's Liability to Victims of Handgun Crime: A Common Law Approach*, 51 Fordham L. Rev. 771, 777 (1983); Joseph H. Rodriquez, *JAD and Conference Report*, 35 No. 2 Judges' J. 24, 43 (Spring 1996); Henry J. Reske, *ABA Won't Endorse Fee Shifting, But Oks Model*, A.B.A.J., Apr. 1996, at 34.

[12]The United States Supreme Court has explained that the "principal purpose of the federal gun control legislation . . . was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" *Huddleston v. United States*, 415 U.S. 814, 824, 94 S. Ct. 1262, 1268-69 (1974). Even courts that have given the Gun Control Act of 1968 a most expansive reading have pointed out that its purpose is to address the prevalence of lawlessness and violent crime in the United States. *Coker v. Wal-Mart Stores, Inc.*, 642 So. 2d 774, 777 (Fla. Dist. Ct. App. 1994).

[13]Compare *Brashear v. Wal-Mart Stores, Inc.*, 117 F.3d 1420, 1997 WL 397219, at *3 (Table 6th Cir. 1997); *Lipari v. Sears, Roebuck & Co.*, 497 F. Supp. 185, 196 (D. Neb. 1980); *Hulsman v. Hemmeter Dev. Corp.*, 647 P.2d 713, 720 (Haw. 1982); *Alderman v. Bradley*, 957 S.W.2d 264, 267-69 (Ky. Ct. App. 1997); *Olson v. Ratzel*, 278 N.W.2d 238, 250 (Wis. Ct. App. 1979) with *Hetherton v. Sears, Roebuck & Co.*, 593 F.2d 526, 531 (3d Cir. 1979); *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532, 1538 (S.D. Ga. 1995); *Kalina v. Kmart Corp.*, No. CV-90-269920 S, 1993 WL 307630, at *5-7 (Conn. Super. Ct. Aug. 5, 1993); *Coker v. Wal-Mart Stores, Inc.*, 642 So. 2d at 778-79; *Wal-Mart Stores, Inc., v. Tamez*, 960 S.W.2d 125, 128 (Tex. App. 1997).

*Round Table, Inc.*, 624 S.W.2d 547, 550 (Tenn. 1981);[14] PROSSER & KEETON § 36, at 227. In addition, another panel of this court has inferred that the sale of handgun ammunition to a person under twenty-one years of age is negligence per se under Tennessee law. *Fly v. Cannon*, 836 S.W.2d 570, 572 (Tenn. Ct. App. 1992). Accordingly, for the purpose of reviewing the trial court's denial of Bend of the River's motion for summary judgment, we will presume that the sale of handgun ammunition to an eighteen year old purchaser in violation of 18 U.S.C. § 922(b)(1) is negligence per se.

Concluding that Bend of the River was negligent per se for its violation of 18 U.S.C. § 922(b)(1) does not end the inquiry. To maintain a successful negligence per se action, Mr. Rains's parents must prove not only that Bend of the River violated a penal statute designed to protect the public but also that the violation of the statute was the legal cause of Mr. Rains's death.

The concept of "legal cause" was formerly known as "proximate cause." It connotes a policy decision made by the judiciary to establish a boundary of legal liability, *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993), and to deny liability for conduct that could otherwise be actionable. *Bain v. Wells*, 936 S.W.2d 618, 625 (Tenn. 1997); *Bara v. Clarksville Mem'l Health Sys., Inc.*, 104 S.W.3d 1, 9 (Tenn. Ct. App. 2002); *Bennett v. Putnam County*, 47 S.W.3d 438, 443 (Tenn. Ct. App. 2000). These policy decisions are based on consideration of logic, common sense, policy, precedent, and other more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient. *White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252, 256 n.6 (Tenn. 1997). An actor's negligent conduct is the legal cause of harm to another if the conduct is a substantial factor in bringing about the harm and there is no rule of law relieving the actor from liability because of the manner in which the actor's negligence resulted in the harm. *Smith v. Gore*, 728 S.W.2d 738, 749 (Tenn. 1987); *Waste Mgmt., Inc. of Tenn. v. South Cent. Bell Tel. Co.*, 15 S.W.3d 425, 431 (Tenn. Ct. App. 1997); Restatement (Second) of Torts § 431 (1965).

One of the rules of law that will relieve a negligent actor from liability is the doctrine of independent intervening cause. This doctrine, which survived the Tennessee Supreme Court's adoption of comparative fault, provides that a negligent actor will be relieved from liability when a new, independent and unforeseen cause intervenes to produce a result that the negligent actor could not have reasonably foreseen. *White v. Lawrence*, 975 S.W.2d at 529; *Glenn v. Conner*, 533 S.W.2d 297, 301-02 (Tenn. 1976). It is premised on the concept that the independent intervening cause breaks the chain of legal causation between the original negligent actor's conduct and the eventual injury. *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 905 (Tenn. 1996); *Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn. 1994). The doctrine applies only when the intervening act (1) was sufficient by itself to cause the injury, (2) was not reasonably foreseeable to the negligent actor, and (3) was not a normal response to the negligent actor's conduct. *Waste Mgmt., Inc. of Tenn. v. South Cent. Bell Tel. Co.*, 15 S.W.3d at 432.

Foreseeability is the key here because no person is expected to protect against harms from events that he or she cannot reasonably anticipate or foresee or which are so unlikely to occur that

---

[14]The Tennessee General Assembly later restricted the scope of the court's negligence per se holding in this case. *See Worley v. Weigels, Inc.*, 919 S.W.2d 589, 592-93 (Tenn. 1996).

the risk, although recognizable, would commonly be disregarded. *Ward v. University of the South*, 209 Tenn. 412, 421, 354 S.W.2d 246, 250 (1962); *Tompkins v. Annie's Nannies, Inc.*, 59 S.W.3d 669, 673 (Tenn. Ct. App. 2000); *Fly v. Cannon*, 836 S.W.2d 570, 572 (Tenn. Ct. App. 1992); PROSSER & KEETON, § 31, at 170. As a general matter, an actor has much less reason to anticipate intentional misconduct than negligence. Restatement (Second) of Torts § 302B cmt. d (1965); *Prosser & Keeton* § 33, at 201. Accordingly, the Tennessee Supreme Court has held that injuries are even less foreseeable when they result "from an act committed by the injured party so obviously fraught with peril as should be sufficient to deter one of reasonable intelligence." *Chattanooga Light & Power Co. v. Hodges*, 109 Tenn. 331, 339-40, 70 S.W. 616, 618 (1902).

Tennessee's courts, like other state and federal courts,[15] have consistently recognized that the independent intervening cause doctrine may properly be invoked in cases involving self-inflicted injury or death. *White v. Lawrence*, 975 S.W.2d at 530; *Lancaster v. Montesi*, 216 Tenn. 50, 58, 390 S.W.2d 217, 221 (1965); *Jones v. Stewart*, 183 Tenn. 176, 180-81, 191 S.W.2d 439, 440 (1946); *Weathers v. Pilkinton*, 754 S.W.2d 75, 78 (Tenn. Ct. App. 1988). Like courts in other jurisdictions, they have also recognized the following three exceptions to this general rule: (1) circumstances in which the defendant's negligence causes delirium or insanity that results in self-destructive acts, *Lancaster v. Montesi*, 216 Tenn. at 58-59, 390 S.W.2d at 221; *Eckerd's, Inc. v. McGhee*, 19 Tenn. App. 277, 287, 86 S.W.2d 570, 575-76 (1935); *Potts v. First Peoples Bank*, No. 03A01-9303-CV-00116, 1993 WL 276858, at *3 (Tenn. Ct. App. July 22, 1993) (No Tenn. R. App. P. 11 application filed); Restatement (Second) of Torts § 455 (1965); (2) custodial settings in which the custodian knew or had reason to know that the inmate or patient might engage in self-destructive acts, *James v. Turner*, 184 Tenn. 563, 568, 201 S.W.2d 691, 693-94 (1941); *Mercer v. HCA Health Servs. of Tenn., Inc.*, 87 S.W.3d 500, 505 (Tenn. Ct. App. 2002); *Cockrum v. State*, 843 S.W.2d 433, 436-37 (Tenn. Ct. App. 1992); *Rural Elec. Ass'n v. Anderson*, 37 Tenn. App. 209, 216-17, 261 S.W.2d 151, 154 (1953); and (3) special relationships, such as a physician-patient relationship, when the caregiver knows or has reason to know that the patient might engage in self-destructive acts. *White v. Lawrence*, 975 S.W.2d at 531.

In cases brought against persons who supplied a suicide victim the means to commit suicide, the foreseeability question hinges on the victim's behavior and demeanor at the time of the sale. Abnormal behavior can provide a basis for concluding that the supplier knew or should have known that the decedent was suicidal. We made this point over seventy years ago in an opinion vacating a jury verdict for a fifteen-year-old girl and her parents after the girl attempted suicide with illegally purchased drugs. Even though the pharmacist violated a statute by selling the medication to the girl, the court determined, as a matter of law, that the pharmacist could not have foreseen that she intended to misuse the medication because her "appearance and condition" did not indicate that she was "delirious, hysterical and temporarily crazy." *Eckerd's, Inc. v. McGhee*, 19 Tenn. App. at 287-88, 86 S.W.2d at 576.

---

[15] *E.g.*, *Cleveland v. Rotman*, 297 F.3d 569, 572 (7th Cir. 2002); *Watters v. TSR, Inc.*, 904 F.2d 378, 383 (6th Cir. 1990); *Dry Storage Corp. v. Piscopo*, 550 S.E.2d 419, 420 (Ga. Ct. App. 2001); *Chalhoub v. Dixon*, 788 N.E.2d 164, 168 (Ill. Ct. App. 2003); *Carney v. Tranfaglia*, 785 N.E.2d 421, 425 (Mass. Ct. App. 2003); *Exxon Corp. v. Brecheen,* 526 S.W.2d 519, 523 (Tex. 1975); *McMahan v. St. Croix Falls Sch. Dist.*, 596 N.W.2d 875, 879-80 (Wis. Ct. App. 1999); PROSSER & KEETON § 44, at 310-11.

More recent cases involving the sale of firearms and ammunition have likewise focused on the conduct and demeanor of the purchaser. The courts generally agree that the act of suicide is an independent intervening cause shielding the seller from liability when the purchaser's conduct could not have led the seller, exercising ordinary care, to anticipate or foresee that the purchaser would use the firearm to commit suicide. When the purchaser's conduct and demeanor would not have put the seller on notice that he or she was mentally unstable, the courts hold, as a matter of law, that the purchaser's suicide is an independent, intervening cause that shields the seller from liability for the suicide. *Brashear v. Wal-Mart Stores, Inc.*, 1997 WL 397219, at \*2-3 (illegal sale of a handgun to a 19 year old); *Scoggins v. Wal-Mart Stores, Inc.*, 560 N.W.2d 564, 567 (Iowa 1997) (illegal sale of ammunition to a 20 year old); *Drake v. Wal-Mart, Inc.*, 876 P.2d 738, 741-42 (Okla. Ct. App. 1994) (illegal sale of a handgun to a 19 year old). Similarly, the courts have sent cases to the jury when the evidence of the purchaser's conduct or demeanor in the store would permit a trier of fact to conclude that the seller knew or should have known that the purchaser was mentally imbalanced. *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532, 1536 (S.D. Ga. 1995); *Kalina v. Kmart Corp.*, 1993 WL 307630, at \*3.

The conduct of sellers of ammunition should be scrutinized with the same standards used to scrutinize the conduct of sellers of firearms. *Wal-Mart Stores, Inc. v. Tamez*, 960 S.W.2d at 130. They must be held to foresee that the ammunition will be used. However, with regard to the sale of ammunition to underage buyers, sellers should, in the absence of suspicious conduct or demeanor, be held to foresee only the sorts of misuse or mishandling of ammunition that result from the purchaser's being too young to appreciate the danger of the ammunition. *Cowart v. Kmart Corp.*, 20 S.W.3d at 784. Suicide, because of its inherently self-destructive nature, is not the sort of misuse or mishandling that sellers of ammunition should be required to foresee in the absence of conduct providing the seller with reason to believe that the purchaser might be suicidal.

It is undisputed that Mr. Rains was not a minor; he was over eighteen years old. He was not a stranger to firearms. His father had taught him how to shoot rifles and pistols safely and had laid down strict rules regarding the use of firearms. None of Mr. Rains's family or acquaintances had any suspicion that he was suicidal, and there is no evidence that his conduct or demeanor when he purchased the ammunition should have given the clerk at Bend of the River reason to foresee or anticipate that he intended to use the ammunition to commit suicide or to misuse it in any other way.

In light of these facts, the burden shifted to Mr. Rains's parents to demonstrate the existence of a material factual dispute regarding what the clerk at Bend of the River knew or should have known regarding Mr. Rains's intended use of the ammunition. While Mr. Rains's parents were unable to produce any evidence that their son's demeanor or behavior should have raised concern about his mental stability, they sought to bolster their foreseeability proof with an affidavit by a physician containing statistical information regarding the suicide rate and purportedly demonstrating a correlation between the suicide and firearms. We have determined that this affidavit does not create a material factual dispute regarding the foreseeability of Mr. Rains's suicide.

This affidavit does not comply with the requirement in Tenn. R. Civ. P. 56.06 that evidence submitted to support or oppose a motion for summary judgment must "set forth . . . facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." First, the affiant fails to demonstrate that he is competent to testify to the

correlation between the suicide and handguns. He states simply that he is "conversant" with the governmental agencies that compiled the information and that the information is "reasonably relied on" and "considered authoritative." Second, the actual source of the information is not one of the governmental agencies the affiant believed to be authoritative. The materials attached to the physician's affidavit were obtained from an organization that advocates stricter regulation of firearms and ammunition.[16]

In addition to the questionable foundation for the information attached to the affidavit, the information itself does not draw a strong correlation between firearms and suicide by persons in Mr. Rains's age group. While the materials contain information regarding the suicide rates in the United States and Tennessee, they fail to establish the foreseeability of an eighteen year old committing suicide with a handgun. The statistics do not indicate how many suicides were committed with firearms in general or with handguns in particular. They also do not provide an age breakdown for these suicides. Thus, they provide no basis for concluding that eighteen year olds are more likely to commit suicide with a handgun than other age groups.[17]

Finally, Mr. Rains's parents assert that even if suicide by eighteen year olds might not be factually foreseeable, 18 U.S.C.A. § 922(b)(1) reflects Congress's determination that suicide is the likely result when handgun ammunition is sold to a person under twenty-one years of age. Therefore, they argue that the mere violation of the statute is sufficient to impose liability. Like other courts, we decline to adopt this liability per se rule. *Brashear v. Wal-Mart Stores, Inc.*, 1997 WL 397219, at \*3; *Scoggins v. Wal-Mart Stores, Inc.*, 560 N.W.2d at 571; *Robinson v. Howard Bros. of Jackson, Inc.*, 372 So. 2d 1074, 1076 (Miss. 1979); *Holder v. Bowman*, No. 07-00-0126-CV, 2001 WL 62596, at \*4-5 (Tex. App. Jan. 25, 2001).

---

[16]The attachments state that their source is the Violence Policy Center and that they are based on statistics compiled by various governmental agencies. According to its website, the Violence Policy Center is

> a national non-profit organization based in Washington, DC [that] works to stop this annual toll of death and injury through research, advocacy, education, and litigation. The VPC approaches gun violence as a public health issue, advocating that firearms be held to the same health and safety standards that virtually all other consumer products must meet. **Guns and tobacco are the only two consumer products for which there is no federal oversight for health and safety.** [emphasis in the original].

*See* http://vpc.org/aboutvpc.htm (last visited July 15, 2003).

[17]Data compiled by the University of Tennessee indicates that firearms dealers in Tennessee have more reason to foresee suicide by adults who are legally able to purchase handguns and ammunition than by younger persons. Between 1990 and 2000, the rates of suicides with firearms committed by persons eighteen years of age and younger fell from 2.70 per 100,000 to 1.80 per 100,000. In contrast, the rate of suicide by firearms among persons nineteen years of age and older decreased from 12.5 per 100,000 in 1990 to 11.3 per 100,000 in 2000. Health Information Tennessee: Tennessee Mortality Rate Data, http://hitspot.utk.edu/~chrg/deathrateicd10.htm (last visited July 22, 2003). The data maintained on the Center for Disease Control's Web-based Injury Statistics Query and Reporting System ("WISQARS") also reflects a much greater suicide by firearm rate in adults nationwide and in Tennessee. Comparison of suicide by firearm rates in 1981 and 1998 among persons 0-19 years of age and persons 20-85+ years of age, http://cdc.gov/ncipc/wisqars (last visited July 22, 2003).

As a general matter, disputed issues regarding legal cause, intervening cause, and foreseeability must be left to the jury. However, the courts must and should resolve these issues when the undisputed facts and inferences to be drawn from the facts enable reasonable persons to draw only one conclusion. *White v. Lawrence*, 975 S.W.2d at 529-30. The undisputed facts in this record provide no basis for concluding that Bend of the River knew or should have known that Mr. Rains intended to use the ammunition he purchased on July 16, 1997 to commit suicide. As tragic as Mr. Rains's death is, we have no basis for holding Bend of the River to a different standard of foreseeability than his family. Accordingly, we find that Mr. Rains's deliberate and considered act of suicide provided an independent, intervening cause that insulates Bend of the River from liability on his parents' negligence per se claim.

## C.
### The Negligent Entrustment Claim

Mr. Rains's parents have also asserted a negligent entrustment cause of action against Bend of the River. While Tennessee law can accommodate a claim for negligent entrustment of handgun ammunition, we have determined that Mr. Rains's parents claim must fail in this case because they have failed to prove that Bend of the River knew or should have known that Mr. Rains was not competent to use the ammunition safely or that Bend of the River should have foreseen that providing the ammunition to Mr. Rains would create an unreasonable risk of physical harm to him or to others.

Tennessee courts recognize the negligent entrustment claims. The cause of action has four elements: (1) an entrustment of a chattel (2) to a person incompetent to use it, (3) with knowledge that the person is incompetent, and (4) that it is the cause-in-fact and legal cause of injury or damage to another. *Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896, 907 (Tenn. 1996); *Harper v. Churn*, 83 S.W.3d 142, 146 (Tenn. Ct. App. 2001); *Nichols v. Atnip*, 844 S.W.2d 655, 659-60 (Tenn. Ct. App. 1992). As the Restatement explains:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390 (1965).

While negligent entrustment claims usually arise in the context of a bailment, it is now widely agreed that the merchants may be considered to be suppliers of chattels. *Ireland v. Jefferson County Sheriff's Dep't*, 193 F. Supp. 2d 1201, 1229 (D. Colo. 2002); *Brown v. Wal-Mart Stores, Inc.*, 976 F. Supp. at 734; *Herndon v. Hughes*, No. 02A01-9706-CV-00128, 1998 WL 90745, at *3 (Tenn. Ct. App. Mar. 4, 1998) (No Tenn. R. App. P. 11 application filed); Restatement (Second) of Torts § 390, cmt. a. Accordingly, state and federal courts have not hesitated to recognize that negligent entrustment claims may be asserted against persons who sell firearms and ammunition. *Morin v. Moore*, 309 F.3d 316 324 (5th Cir. 2002) (assault rifle); *Ireland v. Jefferson County*

*Sheriff's Dep't*, 193 F. Supp. 2d at 1227-28 (shotgun); *Brown v. Wal-Mart Stores, Inc.*, 976 F. Supp. at 734 (ammunition); *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. at 1539 (firearms and ammunition); *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1064 (N.Y. 2001) (firearms); *Wal-Mart Stores, Inc. v. Tamez*, 960 S.W.2d at 130 (ammunition). To establish a claim for negligent entrustment of a firearm or ammunition, a plaintiff must prove that the seller sold the firearm or ammunition to a person it knew, or had reason to know, would be likely because of his or her "youth or inexperience" to use the firearm or ammunition in a manner that would cause unreasonable risk of harm to himself or herself and others.

The tort of negligent entrustment focuses on the degree of knowledge the supplier of the chattel has or should have concerning the entrustee's propensity to use the chattel in an improper or dangerous fashion. However, when the chattel is a firearm or ammunition, the inquiry should focus not just on the experience of the person who uses the firearm or ammunition but also on the foreseeability of an injury. *Byers v. Hubbard*, 669 N.E.2d 320, 322 (Ohio Ct. App. 1995).

The negligent entrustment claim of Mr. Rains's parents suffers from the same deficit of evidence that undermined their negligence per se claim. There is no evidence in this record regarding the conduct or demeanor of Mr. Rains when he purchased the ammunition that would have given Bend of the River any basis to suspect that he was not competent to use the ammunition. The absence of this sort of proof, coupled with the absence of any evidence that his later self-destructive act was reasonably foreseeable, fatally undermines the negligent entrustment claim.

## III.
### THE LOSS OF CONSORTIUM CLAIMS

Mr. Rains's parents and siblings also included loss of consortium claims in their amended complaint. Bend of the River argues that Tennessee does not recognize claims for loss of filial consortium or sibling consortium. In light of our conclusion that the negligence per se and negligent entrustment claims must be dismissed, we need not discuss at length whether Mr. Rains's parents and sibling have loss of consortium claims.

The Tennessee Supreme Court dramatically altered Tennessee's damage jurisprudence in 1999 when it held that the wrongful death statute, Tenn. Code Ann. § 20-5-113 (1994), permitted the recovery of spousal and parental consortium damages. *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 598-601 (Tenn. 1999). Two years later, the court extended its holding in *Jordan* to permit parents to recover filial consortium damages. *Rothstein v. Orange Group Ctr., Inc.*, 60 S.W.3d 807, 813 (Tenn. 2001); *Hancock v. Chattanooga-Hamilton City Hosp.*, 45 S.W.3d 234, 236-37 (Tenn. 2001).

The court's recent decisions rest squarely on the wrongful death statutes, and thus the court has declined to recognize claims for parental consortium damages in personal injury cases. *Taylor v. Beard*, 104 S.W.3d 507, 509 (Tenn. 2003). In addition to Tenn. Code Ann. § 20-5-113, the court has relied on Tenn. Code Ann. § 20-5-110(a) (1994) which authorizes wrongful death actions to be filed "for the benefit of the surviving spouse and the children of the deceased, or in the name of the administrator of the deceased spouse or in the name of the next of kin of the spouse." Based on the Tennessee Supreme Court's decisions handed down after this suit was filed and the language of the

wrongful death statutes, it is clear that Mr. Rains's parents could appropriately seek loss of filial consortium damages. However, in light of Tenn. Code Ann. § 20-5-110(a), it is unlikely that Tennessee law would permit Mr. Rains's siblings to recover damages for loss of sibling consortium.

Claims for loss of consortium damages cannot exist independently from the claim that the defendant's "wrongful act, fault, or omission" caused the decedent's death. Thus, consortium damages cannot be awarded without proof that the defendant committed a "wrongful act, fault, or omission" and that this wrongful act or omission caused the decedent's death. In the previous section of this opinion, we concluded that the negligence per se and negligent entrustment claims must fail because Mr. Rains's act of suicide was, as a matter of law, the independent intervening cause of his death. Accordingly, Mr. Rains's parents have not proved that Bend of the River's "wrongful act, fault, or omission" caused their son's death. Without this proof, no consortium claim can succeed.

## IV.

We reverse the denial of Bend of the River's motion for summary judgment and remand the case to the trial court with directions to enter an order granting summary judgment and dismissing all claims against Bend of the River. The costs of this appeal are taxed to Bobby Wayne Rains and Sandy Gail Rains jointly and severally for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE