IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 3, 2003 Session

## KENNETH TOWNSEND v. AUTO ZONE, INC.

**Appeal from the Circuit Court for Davidson County**
**No. 01C-1362      Barbara Haynes, Judge**

---

**No. M2002-02958-COA-R3-CV - Filed August 31, 2004**

---

This appeal involves the grant of summary judgment to Defendant in a slip and fall case.  The trial court found no genuine issue as to any material fact existed and that Defendant was entitled to judgment as a matter of law.  Because we find the summary judgment motion was improperly granted, we reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., and JAMES L. WEATHERFORD, SR. J., joined.

Nancy K. Corley, Nashville, Tennessee, for the appellant, Kenneth Townsend.

George H. Rieger, II, Nashville, Tennessee, for the appellee, Auto Zone, Inc.

### OPINION

While visiting Defendant's Auto Zone store, Plaintiff, Kenneth Townsend, slipped and fell inside the entrance of the store on May 5, 2000.  Mr. Townsend brought suit against AutoZone, and summary judgment was eventually granted to AutoZone.  Mr. Townsend appeals the grant of summary judgment.  Specifically, Plaintiff argues that he has set out in the record sufficient evidence of material facts creating a genuine issue from which a jury could find or conclude (1) that Defendant's employees created the dangerous condition, (2) that the dangerous condition was caused by its customers and Defendant's employees knew or had constructive knowledge of the condition, or (3) that Defendant's method of operation created a dangerous condition which resulted in an injury to Plaintiff.

## I. THE ACCIDENT

In our review of the grant of summary judgment, we, like the trial court, must view the evidence in the light most favorable to the nonmoving party, here Mr. Townsend, and draw all reasonable inferences in his favor. *Staples v. CBL & Associates, Inc*., 15 S.W.3d 83, 89 (Tenn. 2000). With that standard in mind, we review the facts as set out in the record.

On May 5, 2000, at approximately 2:00 p.m., Plaintiff visited defendant's Auto Zone[1] (the "Store") at 4815 Nolensville Road, Nashville, Davidson County, Tennessee. Plaintiff had been to the Store many times and was familiar with it. On the day in question, it had been raining earlier in the day, but was not raining at the time Plaintiff entered the Store. Nonetheless, the parking lot of the Store was wet from the earlier rain.

Plaintiff followed a Store employee, who had been working on a customer's car in the parking lot, from the parking lot to the front door and then held the entrance door open for the employee who had his hands full and could not open the door. Employees often serviced customers' cars in the front parking lot and used the front entrance doors to come and go from the parking lot to the Store. On the day of the accident employees were in the parking lot servicing customers' cars.

At the entrance, there were two doors side by side, the left for exiting and the right for entering. According to Plaintiff, there was one large carpeted mat approximately 6' by 2-3' inside the front door; there was no mat on the outside of the entrance doors.[2] No warning signs or orange cones were visible to Plaintiff anywhere near the entrance. Plaintiff followed the employee into the Store. The employee crossed to the left in front of Plaintiff where the checkout counter was and Plaintiff walked to this right. Plaintiff stepped off the entrance mat, took a few steps, and his feet slipped out from under him, causing him to fall on his right side.

Mr. Townsend stated that the floor was wet and slippery where he fell; when he tried to get up by turning over on his left side and putting his left hand down, his left hand slipped out from under him and he fell to the floor again. The substance on the wet area of the floor in which Plaintiff slipped and fell was a clear liquid with no odor. Plaintiff's pants and shoes were not wet before his fall, but both were wet afterwards.

After the fall, an Auto Zone employee helped Mr. Townsend to his feet. That employee completed the accident report and listed the cause of the accident/injury on the store report as "wet

---

[1]Auto Zone is a retail establishment selling various automotive products for vehicles to customers, including products such as lubricants and other automotive liquids in sealed containers; accessories such as windshield wipers and mirrors; engine parts; electrical parts, such as fuses, batteries and switches. Defendant was a stand-alone store, it was not in a shopping center.

[2] In contrast, Store employee Tonya Mayes stated in her affidavit that there was a mat on the outside of the entrance as well; she described the inside mat as approximately five feet in length and four feet in depth. It had a carpeted top and rubber backing.

shoes and floor." Plaintiff was taken immediately by ambulance to a local emergency room.[3] At the hospital, Plaintiff learned that he had injured his right shoulder and elbow. Plaintiff incurred $3,842.46 in medical treatment expenses as a result of the accident.

Plaintiff had no idea how long the wet spot had been there before he stepped on it. No employee of Auto Zone said anything to Plaintiff about the wet spot. The policy of the Store was to sweep, clean, mop the floors after closing the Store for the night. Each store was responsible for floor care for the store, including mopping, cleaning the floor during inclement weather. There is no proof in the record that Defendant cleaned and mopped or dried the floor or the mat or replaced the mat inside the door between the time the Store opened and the time Plaintiff fell.

## II. THE TRIAL COURT'S RULING

Plaintiff sued defendant for $100,000 in damages, alleging the Store was negligent in maintaining the floor and that as a direct and proximate cause, Plaintiff incurred both medical bills and pain and suffering. The Defendant filed a motion for summary judgment on the basis Plaintiff could not prove that AutoZone created a dangerous condition, had actual notice of a dangerous condition, or had constructive knowledge of such a condition.

The trial court granted defendant's motion and dismissed the lawsuit in an order that made a general finding that no genuine issue existed as to any material fact and that defendant was entitled to judgment in its favor as a matter of law.

## III. PREMISES LIABILITY

While business proprietors are not insurers of their patron's safety, they are required to use due care under all the circumstances. *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). The premises owner has a duty to exercise reasonable care under the circumstances to prevent injury to persons lawfully on the premises. *Eaton v. McLain,* 891 S.W.2d 587, 593-94 (Tenn. 1994). This duty is based upon the owner's superior knowledge of the condition of the premises. *Blair*, 130 S.W.3d at 364; *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980). The duty includes the obligation of the owner to maintain the premises in a reasonably safe condition and to remove or warn against dangerous conditions on the premises of which the owner is aware or should be aware through the exercise of reasonable diligence. *Eaton,* 891 S.W.2d at 593-94.

In order to recover, a plaintiff alleging injury due to the condition of the property must prove, in addition to the elements of negligence, that 1) the condition leading to the injury was caused by the owner, operator, or his agent, or 2) if the condition was created by someone else, that the owner or operator had actual or constructive notice that the condition existed prior to the accident. *Blair*, 130 S.W.3d at 764; *Martin v. Washmaster Auto Center, U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct.

---

[3]Although Plaintiff's pants were wet from falling into the clear liquid, they had dried by the time the ambulance took him to the emergency room.

App. 1996). Constructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the premises owner or operator should have become aware of it if the owner or operator had exercised reasonable care. *Blair*, 130 S.W.3d at 764; *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986).

A plaintiff can be relieved of the burden of establishing the duration of a dangerous condition if the plaintiff can show that the dangerous condition was part of a pattern of conduct, a recurring incident, or a general or continuing condition such that its presence was reasonably foreseeable to the premises owner. *Blair*, 130 S.W.3d at 765-66. In other words, a plaintiff can prove constructive notice by showing a "pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence."[4] *Id.*

> This approach focuses directly on a principle firmly established in our case law–that a premises owner's duty to remedy a condition, not directly created by the owner, is based on that owner's actual or constructive knowledge of the existence of the condition. It simply recognizes the logical conclusion that, when a dangerous condition occurs regularly, the premises owner is on constructive notice of the condition's existence. This places a duty on that owner to take reasonable steps to remedy this commonly occurring dangerous condition.

*Id*. at 766.

### IV. SUMMARY JUDGMENT

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). This court's role in review of the grant of summary judgment is to review the record and determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Staples*, 15 S.W.3d at 88 (Tenn. 2000); *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997).

Summary judgments enable courts to resolve cases on dispositive legal issues, and summary judgment is appropriate in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Rains v. Bend of the River*, 124 S.W.3d 580, 587 (Tenn. Ct. App. 2003). The requirements for the grant of summary judgment are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

---

[4]The condition need not be the result of the owner's method of operation, and the Supreme Court rejected that title for the theory it adopted as an alternative method of proving constructive notice. "But under the theory we now adopt, the owner's way of doing business is not determinative. The question is whether the condition occurs so often that the premises owner is put on constructive notice of its existence. The condition could be caused by the owner's method of operation, by a third party, or by natural forces." *Blair*, 130 S.W.3d at 766. Our review of any issues related to Mr. Townsend's reliance on the theory of "method of operation" is controlled by *Blair*.

4

Tenn. R. Civ. P. 56.04; *Fruge*, 952 S.W.2d at 410; *Byrd*, 847 S.W.2d at 210; *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000).

Thus, summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Goodloe v. State*, 36 S.W.3d 62, 65 (Tenn. 2001); *Staples*, 15 S.W.3d at 88. However, summary judgment may be used to resolve outcome determinative issues. Even where the determinative issue is ordinarily a question of fact for the jury, such as causation, summary judgment is still appropriate if the evidence is uncontroverted and the facts and inferences to be drawn therefrom make it clear that reasonable persons must agree on the proper outcome or draw only one conclusion. *White v. Lawrence,* 975 S.W.2d 525, 529-30 (Tenn. 1998); *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 905 (Tenn. 1996); *Rains*, 124 S.W.3d at 588.

The question in a summary judgment situation is whether sufficient evidence has been presented that creates a material issue of fact that should be presented to the jury. A court must determine first whether factual disputes exist and, if so, whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). A court must review the evidence presented at the summary judgment stage in the light most favorable to the nonmoving party, afford all reasonable inferences to that party, and discard all countervailing evidence. *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993); *Byrd*, 847 S.W.2d at 210-11.

Whether a fact is material often depends upon whether it proves or disproves a necessary element of the cause of action. The procedure and burdens have been explained many times.

> To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Staples*, 15 S.W.3d at 88-89 (citations omitted). Thus, if, but only if, the moving party presents evidence sufficient to justify grant of the motion if the facts remain uncontested, the nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve a factual dispute at trial. Where the moving party satisfactorily challenges the nonmoving party's ability to prove an essential element of its claim, the nonmoving party has the burden of pointing out, rehabilitating, or providing new evidence to create a factual dispute as to that element.

5

*Staples*, 15 S.W.3d at 88-89; *Rains*, 124 S.W.3d at 587-88. A nonmoving party who fails to carry that burden faces summary dismissal of the challenged claim.

## V. ANALYSIS

From the parties' Statements of Undisputed Facts, Responses thereto, affidavits, and depositions filed herein, we can conclude that, for purposes of deciding this motion for summary judgment, the following facts were shown.

Plaintiff fell when he stepped on a wet spot on the floor a few steps from the mat inside the entry. Plaintiff described the substance on the floor as a clear liquid. He did not know if it was water or hydraulic fluid; he did not smell or taste it, and it gave off no odor. He described the floor as wet and slippery, because his hand slipped out from under him when he tried to use it to get up. His trousers were wet after the fall, but they dried by the time he got to the hospital "so he doesn't know what was on them." They were not wet before the fall.

It had been raining earlier in the day, but was not raining when Plaintiff arrived at the store. Plaintiff did not know how long it had been since the rain stopped. The ground outside the Store was still wet when Plaintiff arrived.

Employees of AutoZone routinely serviced customers' cars in the front parking lot of the Store and used the front doors of the Store for ingress and egress from the Store to the parking lot, carrying various auto products to and from the Store and the customers' cars. There were employees in the parking lot on the day of the accident servicing customers' cars. As he entered the Store, Plaintiff held the door for an employee who was carrying things in from the parking lot. The employee veered left when he entered the Store, and Plaintiff veered right.

It was AutoZone's policy to sweep, clean, and mop the floors after closing the Store for the night. Each store manager was responsible for floor care including mopping and cleaning the floor during inclement weather. The floor had not been mopped or cleaned the day of the accident between the time the Store opened and Plaintiff fell; the mat inside the door had not been changed.

On the day of the accident, there were "countless numbers" of customers in the Store and four employees. One employee, identified as a Commercial Specialist, stated the she had no personal knowledge, nor had she been advised by co-workers or customers, of any potentially dangerous hazard or condition at or near the time of Plaintiff's fall. She further stated, "Although employees and patrons of AutoZone entered the store on the day of the accident, there was no indication that a dangerous condition existed on the floor prior to the accident." No employee made any statement to Plaintiff indicating any prior knowledge of the wet condition of the floor.

The employee further testified that it was the policy and practice of AutoZone employees to identify water and/or other accumulations on the floor and respond by placing caution cones to warn patrons when foreign substances or water accumulations are discovered by, or brought to the

6

attention of, AutoZone employees. The hazard cones are kept in close proximity to the front door. Plaintiff stated he did not see any caution cones at or near the front door. The employee also testified, "AutoZone employees are trained to constantly observe and immediately clean potentially dangerous conditions on the floor."

Based on these undisputed facts as well as his version of the few disputed facts, Plaintiff advances several theories about how the floor got wet. First, Plaintiff argues that a jury could infer from the facts in the record that the wet substance was some clear lubricant, either by itself or mixed with water from the rain in the parking lot. That lubricant could have been spilled by one of AutoZone's employees while going out to the parking lot to service a customer's car or upon re-entering the Store. Alternatively, the wet, slippery substance on the floor could have resulted from trackage into the store of an automotive lubricant spilled in the parking lot by an employee. Plaintiff further argues that a jury could conclude that only an employee would have spilled an automotive product since only employees would be carrying unsealed containers of such produces in or out the door.

Alternatively, Plaintiff argues that a jury could infer from the facts in the record that Plaintiff could have slipped in water tracked in by customers and employees during the earlier rain, from the wet parking lot, or from the entry mat which could have been wet from being walked on all morning. Plaintiff asserts a jury could have inferred the wet condition had existed long enough for AutoZone to have constructive notice of if because it had rained earlier in the day and because employees had gone in and out the doors all day and had the opportunity to see the water accumulation.

Finally, Plaintiff argues that AutoZone's practices created or allowed the dangerous condition. Specifically, AutoZone chose a method of operating in which employees used the front doors to go out to the parking lot to service customers' cars, setting up the situation where employees could spill automotive products while coming in or going out the doors and/or customers could track such liquids from the parking lot inside the Store. Additionally, Plaintiff argues that AutoZone's policies of cleaning the Store's floor at night after closing, leaving discretion for other cleaning to the manager, and not requiring that the front entrance mat be cleaned or replaced after a rain "could be deemed inadequate."

Plaintiffs' theories require favorable inferences and, some would say, some speculation. Plaintiff argues that in order to prove the necessary elements of a slip and fall case, plaintiff may do so by either direct evidence and/or circumstantial evidence, by reasonable inferences and conclusions that may be reached by the jury using its general personal knowledge and experience and that the trial court in considering this evidence and the reasonable inferences to be drawn therefrom in a defendant's summary judge motion must do so in a light most favorable to the nonmovant plaintiff. *See Simmons*, 713 S.W.2d at 640 (reversing directed verdict where jury could reasonably infer facts concerning issue of causation to render it not speculative)*; Burgess v. Tie Co. 1, LLC*, 44 S.W.3d 922 (Tenn. Ct. App. 2000) (vacating summary judgment for defendant where jury could infer icy conditions that caused carwash customer to slip and fall next morning); *Beske v. Opryland USA, Inc.*, 923 S.W.2d 544 (Tenn. Ct. App. 1996) (reversing directed verdict for defendant where jury could

7

make reasonable inference about the cause of plaintiff's fall and the constructive notice to defendant); *Keene v. Cracker Barrel Old Country Store, Inc.*, 853 S.W.2d 501 (Tenn. Ct. App. 1992) (vacating summary judgment for defendant where jury could draw reasonable inferences using general personal knowledge and experience about customer's fall); *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560 (Tenn. ct. App. 1985) (reversing directed verdict for defendant in slip and fall case where jury could reasonably infer who caused the wax to be on the floor and whether the defendant had actual or constructive notice).

On the other hand, AutoZone argues that Plaintiff has presented no proof that AutoZone created or caused an unreasonably dangerous condition and that Plaintiff admitted in his deposition that he had no evidence that an employee of AutoZone created the wet condition of the floor. AutoZone distinguishes other cases where there was sufficient proof from which the jury could infer that only an employee could have created the condition leading to the slip and fall.

AutoZone also argues that Plaintiff has presented no proof that AutoZone employees had any knowledge that the floor was wet prior to Plaintiff's fall. Again, AutoZone relies on statements made by Plaintiff in his deposition admitting that he had no evidence whatsoever that any employee knew of the wet spot prior to his fall. AutoZone also argues that Plaintiff has absolutely no proof as to how long the wet substance was on the floor and admitted he had no way of knowing how long the condition had existed.

These deficiencies in Plaintiff's proof, AutoZone argues, justify summary judgment because "in the absence of proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements," relying on *Ogle v. Winn-Dixie Greenville*, 919 S.W.2d 45 (Tenn. Ct. App. 1995) and *Chambliss v. Shoney's, Inc.*, 742 S.W.2d 271 (Tenn. Ct. App. 1987).[5]

The issue at this point in the litigation, however, is not whether Plaintiff's case is too speculative to be presented to a jury. Rather, the question is whether the party moving for summary judgment, AutoZone, provided proof sufficient to negate an essential element of Plaintiff's claim or sufficient to require Plaintiff to come forward with proof that creates a material factual dispute in order to avoid dismissal at this time.

Our Supreme Court has made it clear that a court's first task in deciding a summary judgment motion filed by a defendant is to determine whether the moving party has presented proof that negates an essential element of the plaintiff's claim or establishes an affirmative defense. If the filings supporting the motion do not include such proof, the nonmoving party is not required to come forward with additional proof in order to avoid dismissal on the basis of that summary judgment

---

[5]We note that *Chambliss* involved dismissal by a directed verdict, not a summary judgment.

motion. *Blair*, 130 S.W.3d at 767-68; *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998).

In *McCarley*, the plaintiff alleged he had contracted food poisoning after eating improperly cooked chicken at the defendant restaurant. The restaurant filed a motion for summary judgment arguing the customer could not prove by a preponderance of the evidence that the chicken caused the food poisoning. The customer presented medical proof that his symptoms were consistent with having eaten improperly cooked poultry or meat. The restaurant argued the customer could not prove that its chicken, rather than eggs or bacon eaten earlier in the day, had caused the food poisoning. The trial court granted the restaurant's motion for summary judgment. As the Supreme Court later explained:

> In reversing the lower courts' decisions granting summary judgment, this Court stated: "[t]he appellate court acknowledged the moving party's burden of demonstrating the absence of material facts creating genuine issues for trial. The court, however, bypassed the moving parties' initial burden and addressed only the sufficiency of the non-moving parties' opposing evidence. We find that the court erred in focusing on the non-moving parties' burden without first addressing whether that burden was actually triggered." *Id*. at 587-88. The restaurant's assertions in its motion "may cause doubt as to whether the chicken or the bacon caused Mr. McCarley's illness. This evidence, however *does not negate* the chicken from the list of possible causes. Accordingly, a genuine issue of material fact exists as to causation which should be resolved by the trier of fact." *Id*. at 588. "Because KFC failed to negate a basis of the McCarleys' claim, the McCarleys' burden of production was never triggered." *Id*. at 589 (emphasis added).

*Blair*, 130 S.W.3d 761.

*Blair* itself was a slip and fall case involving issues of constructive notice. The Supreme Court's holding in that case is directly applicable to the case before us:

> In support of Defendant's motion for summary judgment Defendant offered Plaintiff's deposition testimony that Plaintiff does not know how long the substance had been present on the parking lot or whether Defendant had notice of its presence. The Court of Appeals was correct in noting that while this evidence casts doubt on Plaintiff's ability to prove at trial whether Defendant had actual or constructive notice of the dangerous condition in Defendant's parking lot, it does not negate the element of notice. The deposition testimony does not prove that Defendant did not have actual or constructive notice. Therefore, the materials filed by Defendant did not affirmatively negate an essential element of Plaintiff's claim, and Plaintiff's burden to produce evidence establishing the existence of a genuine issue for trial was not triggered. Therefore, the trial court erred in granting summary judgment.

*Id*.

In addition, the Supreme Court held that there were not sufficient facts in the record created by the summary judgment filings to determine whether the slick spot where the plaintiff fell was part of a pattern of conduct, a recurring incident, or a general or continuing condition making its existence foreseeable. *Id.* at 767.

With this analytical framework as a background, we review the evidence in the record.

It is significant that AutoZone has not disputed, for purposes of this motion, that there was a wet place on the floor, or as AutoZone describes it, an unknown and unidentified substance.[6] Thus, the existence of a wet and slippery substance on the floor a few steps beyond the mat at the entry is not in question.

With regard to Plaintiff's theory that the substance could have been automotive lubricant, AutoZone presented absolutely no proof about the substance itself. Although presumably AutoZone employees cleaned the floor and removed the wet, slippery substance, in its filings in support of its motion for summary judgment, AutoZone makes no reference to the substance, what it was, or even its properties or characteristics. Also, there was no statement from any of the employees on duty that day, much less all four of them, that they had not spilled any material meeting Plaintiff's description.

With regard to the constructive notice issue, AutoZone supplied the affidavit of one employee who stated she had no knowledge of the wet condition of the floor and that no one else told her about it. However, there is nothing in that affidavit to establish that this particular employee was a manager or suggesting that she held any position requiring that other employees would have reported the condition to her. No affidavit from any of the other three employees on duty that day was supplied.

Plaintiff's theories about AutoZone's policies contain a great deal of speculation about the existence of recurring incidents or continuing conditions such that the presence of a wet slippery substance in close proximity to the door was reasonably foreseeable. Certainly, the lack of evidence that a dangerous condition had ever been caused before by the practices and procedures cited by Plaintiff would preclude the establishment of constructive notice at trial. However, AutoZone did not provide any proof negating the prior existence of a dangerous condition created by employees carrying automotive products in and out of the door or the failure to routinely replace a wet mat at the entry with a dry one. AutoZone simply did not address this issue with any proof. Consequently, Plaintiff was not required to come forward with countervailing proof at this stage of the litigation.

AutoZone submitted statements about its policies and training regarding maintaining the floors in a safe condition. However, AutoZone would have us make inferences from these

---

[6]In its brief, AutoZone argues that Plaintiff has no evidence to establish that a foreign substance even existed on the floor prior to his fall and states, "It is certainly possible that there was no water or foreign substance on the floor at all, and that Plaintiff slipped on his own wet shoes." However, AutoZone presented no evidence, by affidavit or otherwise, that there was no water or foreign substance on the floor. Plaintiff testified the floor was wet and slippery when he tried to get up and that his pants were wet after his fall. AutoZone's argument, therefore, disregards Plaintiff's testimony and asks the court to speculate as to a fact it has not proved.

statements that we cannot do in reviewing a summary judgment ruling.  We must afford all favorable inferences to the nonmoving party, herein the Plaintiff.

AutoZone did not present evidence disproving any of the elements of Plaintiff's claim.  Consequently, the burden never shifted to Plaintiff to come forward with more proof.  AutoZone cannot rely on deficiencies in Plaintiff's proof to establish its entitlement to summary judgment.  Based on *Blair* and *McCarley*, we must reverse the grant of summary judgment.

## VI.

The judgment of the trial court is reversed and remanded.  The costs of this appeal are taxed to the appellee, AutoZone.

_____
PATRICIA J. COTTRELL, JUDGE