FILED
04/26/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 3, 2022 Session

## CAROLINE HARRILL V. PI TENNESSEE, LLC ET AL.

**Appeal from the Circuit Court for Giles County**
**No. 19-CV-11820        Russell Parks, Judge**

_____

### No. M2021-00424-COA-R3-CV

_____

A guest sued a landlord for negligence after the guest was injured by a vicious animal while visiting the landlord's tenant. The landlord filed a motion for summary judgment that the trial court granted. Because the undisputed facts establish that the landlord did not breach any duty owed to the guest, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Charles Anthony Graffeo, Huntsville, Alabama, for the appellant, Caroline Harrill.

Michael T. Schmitt, Austin Tyler Warehime, and Dayne Paul Geyer, Nashville, Tennessee, for the appellee, PI Tennessee, LLC.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

PI Tennessee, LLC ("PI" or "Owner"), owns and operates a fifty-lot mobile home park known as Brandywine Estates. On March 1, 2015, PI entered into a monthly rental agreement ("the Lease") leasing Lot 31 to Gina Branch ("Ms. Branch" or "Lessee"). The Lease contained a pet provision that stated, in pertinent part:

> All LESSEES who own their mobile home and are renting a mobile home lot space from the OWNER are permitted to own one (1) docile, domestic pet which must be pre-approved by the park manager. However, all LESSEES who own their mobile home and are renting a mobile home lot space from the OWNER are prohibited from possessing or having any of the following:

Live poultry, rabbits, fowl, horses, cows or reptiles of any kind or other exotic animals, pit bull dogs, Dobermans, Rottweilers, chows and/or wolf hybrids. No dogs over 30 pounds allowed.

The Lease also contained the following provision regarding the removal of a tenant's property:

OWNER may and LESSEE does hereby authorize and contract that OWNER shall have the absolute and incontestable right to remove or cause to be removed from the space hereby rented from [PI] all/or part of LESSEE'S property at any time with or without notice or reason, and additionally to remove same without notice should . . . LESSEE or LESSEE'S property violate any part of this lease.

Between March 15, 2015 and February 24, 2016, Ms. Branch's son, Jonathan Pitts, resided with her at Lot 31. While living with his mother at Lot 31, Mr. Pitts kept his pit bull, Ruger, in the home despite the Lease's prohibition against pit bulls. PI sent Ms. Branch the following warning in March 2016:

Pitbulls are not allowed in the park ever, even to visit! Any guests you have cannot bring their Pitbulls to your home and you cannot dog sit any dogs. . . . If a pit bull is found in your possession again, I[1] will personally file your eviction without notice, as you have been warned multiple times.

Nearly two years later, Mr. Pitts, his girlfriend, Madison McGill, and Ruger were visiting Ms. Branch at Lot 31 when Ruger bit Ms. McGill. PI learned of this attack on January 10, 2018,[2] and its member-manager, Eleanor Porter, ordered Ms. Branch to remove Ruger from the property and issued her a 30-day notice of eviction for violating the Lease's pet provision. PI neither saw Ruger at Lot 31 nor received any reports of him being present on PI property following January 10.

Twenty-one days after receiving the eviction notice, on January 31, 2018, Ms. Branch once again permitted Ruger onto Lot 31 and kept him inside the mobile home. Caroline Harrill was at Lot 31 that day assisting Ms. Branch with packing and moving her belongings. While inside the mobile home, Ruger injured Ms. Harrill by biting her.

---

[1] The "I" in the March 2016 warning refers to PI's member-manager, Eleanor Porter.

[2] Ms. Harrill testified that Ruger bit Ms. McGill in December 2017 and then bit another woman, Taylor Reese, on January 10, 2018; she did not state whether or not the attack on Ms. Taylor occurred at Lot 31. Ms. Harrill did not dispute that PI did not have knowledge of the attack on Ms. McGill prior to January 10. Thus, we agree with the trial court's finding that this distinction, as it relates to when PI had notice of Ruger's dangerous propensities, "is not material for the purposes for this motion for summary judgment."

Ms. Harrill filed a complaint against PI on January 29, 2019, claiming that her injuries were caused by PI's negligent failure to remove or restrain Ruger after learning of the attack on Ms. McGill. PI filed an answer and, after engaging in discovery, filed a motion for summary judgment. According to PI, it was entitled to summary judgment because Ms. Harrill failed to allege facts establishing that it breached any duty owed to her. Ms. Harrill filed a response contending that, as the owner of Lot 31, PI had a duty to maintain the lot in a reasonably safe condition and that substantial evidence in the record created an issue of material fact regarding whether PI's failure to invoke the immediate removal provision of the Lease amounted to a breach of that duty.

PI responded by filing the affidavit of Ms. Porter which provided that, although the Lease contemplates no-notice removal, it was not something that had ever been done while she worked for PI because it would actually take more time than the 30-day notice removal and would cost approximately $4,000. Ms. Harrill filed a motion to strike those statements from Ms. Porter's affidavit on the basis that they were not based on personal knowledge. After hearing arguments on both motions, the trial court entered an order denying the motion to strike and granting summary judgment to PI.

Ms. Harrill timely appealed and presents two issues for our review that we consolidate and restate as follows: whether the trial court erred in granting the motion for summary judgment.

STANDARD OF REVIEW

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must submit evidence either "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or

defense." *Rye*, 477 S.W.3d at 264. Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. If the moving party fails to show he or she is entitled to summary judgment, however, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin*, 271 S.W.3d at 83 (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

ANALYSIS

Ms. Harrill's claim sounds in negligence. To establish prima facie proof of negligence, a plaintiff must prove five essential elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Biscan v. Brown*, 160 S.W.3d 462, 478 (Tenn. 2005). This case involves the duty and breach of duty elements.

Whether a duty exists in a particular case presents a question of law that we review de novo without a presumption of correctness afforded to the trial court's conclusion. *Cullum v. McCool*, 432 S.W.3d 829, 832-33 (Tenn. 2013); *see also Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006) (stating that a question of law is reviewed "de novo with no presumption of correctness"). The Tennessee Supreme Court has defined duty as "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). When determining whether a particular defendant owed a duty to protect against an unreasonable risk of harm, courts apply a balancing approach "consistent with principles of fairness." *Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn. 1997). This means that a risk generally is deemed unreasonable and gives rise to a duty of care "if the foreseeable probability and gravity of harm posed by the defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall*, 913 S.W.2d at 153 (citing RESTATEMENT (SECOND) OF TORTS, § 291 (1964). "[T]he degree of foreseeability needed to establish a duty of care decreases in proportion to the magnitude of the foreseeable harm." *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 433 (Tenn. 1994).

Among the many factors that must be considered by a court when applying this balancing approach are the following:

[T]he foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*McCall*, 913 S.W.2d at 153 (citing RESTATEMENT (SECOND) OF TORTS §§ 292, 293 (1964)); *see also Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). All of these factors are important, but the foreseeability factor is of paramount importance "because '[f]oreseeability is the test of negligence.'" *Biscan*, 160 S.W.3d at 480 (quoting *Doe v. Linder Constr. Co., Inc.*, 845 S.W.2d 173, 178 (Tenn. 1992)). "If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise" even if the causation in fact element is established. *Doe*, 845 S.W.2d at 178. Therefore, if a plaintiff fails to show that the risk was reasonably foreseeable, he or she fails to prove that the defendant owed him or her a duty of care. "Foreseeability must be determined as of the time of the acts or omissions claimed to be negligent." *Id.*

If a court concludes that a duty is owed, it must then "'determine[] whether [the] defendant has exercised reasonable care under the circumstances. If [the] defendant has not, the duty has been breached. In this regard, we have observed that "[t]he term reasonable care must be given meaning in relation to the circumstances."'" *Malone v. Viele*, No. E2021-00637-COA-R3-CV, 2021 WL 6111711, at *4 (Tenn. Ct. App. Dec. 27, 2021) (quoting *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 895 (Tenn. 1996) (citations omitted)). Generally, questions pertaining to the breach of duty element are for the jury to decide. *Id.* (citing *Rains v. Bend of the River*, 124 S.W.3d 580, 588 (Tenn. Ct. App. 2003)). "[T]hese questions may be decided at the summary judgment stage," however, "if the evidence is uncontroverted and if the facts and the inferences drawn reasonably from the facts permit reasonable persons to draw only one conclusion." *Rains*, 124 S.W.3d at 588.

In cases, like the one at bar, that involve domesticated animals, landlords typically are not liable for injuries caused by animals owned or harbored by their tenants. *McKenna v. Jackson*, No. 01-A-01-9510-CV-00438, 1996 WL 140496, at *2 (Tenn. Ct. App. Mar. 29, 1996) (citing *Zwinge v. Love*, 325 N.Y.S.2d 107, 108 (N.Y. App. Div. 1971)). But, if the landlord, "becomes aware of the fact that his tenant is harboring an animal with vicious propensities, and if he had control of the premises or other capability to remove or confine the animal," we have held that the landlord owes a duty to protect a third person from injury. *Id.* (citing *Cronin v. Chrosniak*, 536 N.Y.S.2d 287 (N.Y. App. Div. 1988)); *see also Langford v. Darden*, No. M2004-00158-COA-R3-CV, 2005 WL 378774, at *2 (Tenn. Ct. App. Feb. 16, 2005).

A.  Duty owed on January 10.

There is no dispute that PI learned of Ruger's attack on Ms. McGill on January 10, 2018, and therefore became aware that Ms. Branch was harboring an animal with vicious propensities.  Furthermore, there is no dispute that PI had authority under the Lease to remove the animal from the property.  In light of this, the parties agree that, on January 10, PI owed a duty to protect third persons from injury inflicted by Ruger.  The parties' primary dispute centers on whether an issue of material fact exists regarding the reasonableness of PI's actions after learning of Ruger's vicious propensities.  According to Ms. Harrill, under the circumstances of this case, the duty of reasonable care required PI to invoke the Lease's no-notice removal provision to remove Ms. Branch from Lot 31 because it would have taken less time to complete than using the "lengthy" 30-day notice process and would have therefore prevented her injury.

*Dionne v. Brown* provides guidance on this issue.  No. 01-A-019202-CV-00048, 1992 WL 184929 (Tenn. Ct. App. Aug. 5, 1992).  After sustaining injuries from a dog bite, the plaintiff in *Dionne* sued the dog owner and the property managers of the apartment complex where the dog owner lived.  *Id.* at *1.  The property managers admitted that they knew the dog previously had bitten a maintenance man but had done nothing to remove the dog from the premises despite having the authority to do so.  *Id.*  Nevertheless, at the close of all the proof, the trial court directed a verdict for the property managers absolving them of any liability.  *Id.*

On appeal, the *Dionne* court reversed the trial court, holding that "'*if a person harbors a dog accustomed to bite, or allows it to frequent his premises, he is liable, although not the owner of it.*'"  *Id.* at *2-3 (quoting *Missio v. Williams*, 167 S.W. 473, 474 (Tenn. 1914) (emphasis added)).  As the court explained:

> "Assuming [the landlord's] knowledge of the vicious dog, the foreseeability of harm to the [third person] was obvious; It was simply a question of time before someone invited onto the premises would be attacked by the dog.  The failure of [the landlord] to order his tenant to cease harboring the dog under pain of having the tenancy terminated, is closely connected with the injuries suffered; if [tenant] had not removed the dog and [landlord] had ousted him from possession the danger would have ended.  There is a moral blame attached to a landlord's conduct under these circumstances; he cannot be permitted to knowingly stand aside where it is shown that he has the power to remove the animal from the premises without incurring a liability for his failure to act.  We find no extensive burden on a landlord in requiring him to act under the circumstances; the risk of the loss of a tenant from his premises must yield to the obvious danger to third parties.  Finally, the availability, cost and prevalence of insurance for the risk involved does not preclude the imposition of liability; a landlord readily can obtain

insurance to protect himself from liability to third parties for injuries suffered on the premises or he can require, as a condition of renting the premises, that his tenant obtain such insurance."

*Id.* at *3 (quoting *Uccello v. Laudenslayer*, 118 Cal. Rptr. 741, 747-48 (Cal. Ct. App. 1975)). In other words, if a landlord knows a tenant is harboring a vicious animal and has the authority to remove the animal, he or she satisfies the duty of reasonable care by ordering the tenant to remove the vicious animal from the premises or by terminating the lease and initiating eviction procedures.

In her deposition, Ms. Porter testified that, immediately after learning on January 10 about the attack on Ms. McGill, PI ordered Ms. Branch to remove Ruger from Lot 31 and issued Ms. Branch a 30-day notice to vacate the premises. Ms. Harrill admitted that, after January 10, Ruger was, in fact, removed from the premises because Mr. Pitts relocated him to a friend's home. Following Ruger's relocation, PI neither saw him on Lot 31 nor received any reports that he was there. The undisputed facts, therefore, establish that, on January 10, PI satisfied its duty of care because the dangerous condition had been removed from the property. Thus, Ms. Harrill's assertion that the 30-day notice eviction process may have taken longer to complete than the no-notice eviction process is of no relevance to PI's duty on January 10.

B. Duty owed on January 31.

Although PI satisfied its duty of reasonable care on January 10, Ms. Harrill contends that a subsequent duty of reasonable care arose because PI should have known that Ruger was in Ms. Branch's mobile home on January 31. Essentially, Ms. Harrill's argument is that PI had constructive notice that Ruger returned to the property and was inside Ms. Branch's mobile home on January 31 because PI knew that Ms. Branch had a history of not complying with the Lease's prohibition against pit bulls. That constructive notice, Ms. Harrill asserts, once again gave rise to a legal duty on PI's part to exercise reasonable care to protect third persons from injury inflicted by Ruger. According to Ms. Harrill, PI breached this duty by failing to invoke the no-notice eviction provision of the Lease prior to Ruger attacking her on January 31.

As we recently explained, "[u]nless the [premises owner] has actual or constructive notice of a dangerous condition on its premises, it does not owe a duty to warn of or remove the dangerous condition." *Lyon v. Castle Retail Grp., LLC*, No. W2019-00405-COA-R3-CV, 2020 WL 1867368, at *3 (Tenn. Ct. App. Apr. 14, 2020) (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004)). What then is "constructive notice"? "Constructive notice" means "'information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 351 (Tenn. 2014)

(quoting *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15 (Tenn. 1997)). A plaintiff establishes that a premises owner had constructive notice of a dangerous or defective condition "by showing that [the] dangerous or defective condition existed for such a length of time that [the] property owner, in the exercise of reasonable care, should have become aware of it." *Id.* A plaintiff may also establish that a premises owner had constructive notice by proving that the dangerous or defective condition was the result of "a pattern of conduct, a recurring incident, or a general or continuing condition." *Blair*, 130 S.W.3d at 765.

Although not expressly stated, we discern from Ms. Harrill's appellate brief that she believes PI had constructive notice of Ruger's return to Lot 31 on January 31 because PI knew that Ms. Branch routinely allowed Ruger onto Lot 31 despite multiple warnings from PI that the Lease did not permit pit bulls on the property. In other words, she contends that PI should have known Ruger would return to the property and should have invoked the Lease's no-notice provision to protect third persons from injuries inflicted by Ruger. PI acknowledges that Ms. Branch had a history of disregarding warnings about allowing Ruger on the property, but PI contends that, even if it had constructive notice of Ruger's return to the property, it did not breach a duty owed to Ms. Harrill because it took reasonable steps to remedy the dangerous condition. We agree with PI.

Our Supreme Court has stated, "when a dangerous condition occurs regularly, the premises owner is on constructive notice of the condition's existence[,]" and that "places a duty on that owner *to take reasonable steps to remedy this commonly occurring dangerous condition*." *Blair*, 130 S.W.3d at 766 (emphasis added). The undisputed facts of this case show that PI took reasonable steps to remedy the dangerous condition. On January 10, PI ordered Ms. Branch to remove Ruger from the property, and it is undisputed that Mr. Pitts then relocated Ruger to the home of a friend. Ms. Porter testified in her deposition that, between January 10 and January 31, PI monitored the mobile home park and did not see either Mr. Pitts or Ruger return to Lot 31, nor did PI receive any reports that Ruger had been on the premises during that time period. Ms. Porter admitted that she did not inspect the inside of Ms. Branch's mobile home to see if Ruger was there, but the Lease authorized PI to inspect only the lot the mobile home sat on; it did not authorize PI to inspect the interior of the home. Based on the foregoing, we conclude that PI did not breach any duty owed to Ms. Harrill on January 31.

Because PI submitted proof affirmatively negating the breach element, we affirm the trial court's decision granting summary judgment.[3]

---

[3] Ms. Harrill's remaining argument concerns the affidavit of Ms. Porter detailing the no-notice eviction process. According to Ms. Harrill, the trial court should not have considered those statements because they were not based on personal knowledge. We do not reach the merits of whether the court erred in considering that affidavit, as we have concluded that the remaining undisputed proof establishes that PI has affirmatively negated the breach element of Ms. Harrill's cause of action, thereby necessitating the grant of summary judgment.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Caroline Harrill, for which execution may issue if necessary.


_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE